IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | |
|---|---|
| **ARIELLE JULIA ROFFMAN,**<br>**Plaintiff,**<br><br>vs.<br><br>**ASHEVILLE ACADEMY FOR GIRLS, LLC (f/k/a SOLSTICE EAST, LLC and MAGNOLIA MILLS SCHOOL), WILDERNESS TRAINING & CONSULTING, LLC (d/b/a FAMILY HELP AND WELLNESS), and JOHN DOE ENTITIES 1-10,**<br>**Defendants.** | Case No. _____<br><br>**COMPLAINT AND JURY DEMAND** |

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

COMES NOW Plaintiff, Arielle Julia Roffman, by and through her counsel of record, Rhine Law Firm, P.C. and Griffin Purnell, LLC, and respectfully alleges as follows:

## I.  INTRODUCTION

1. This action arises from the systematic abuse, neglect, exploitation, and forced labor of a minor resident at a residential treatment facility operated by Defendants under the name Asheville Academy for Girls (formerly Solstice East). Plaintiff, who was a vulnerable minor placed in Defendants' care for therapeutic treatment, instead suffered severe physical, emotional, and sexual abuse, as well as being subjected to forced labor for the economic benefit of the facility, all of which has caused lasting psychological harm.

2. Defendants operated a facility that prioritized control and economic exploitation over genuine therapeutic care, employed unqualified staff, failed to protect residents from sexual assault, subjected residents to punitive isolation measures, systematically covered up reports of

abuse, and forced minor residents to perform extensive unpaid labor that provided economic benefit to the facility.

## II.    PARTIES

3.      Plaintiff ARIELLE JULIA ROFFMAN ("Ms. Roffman") is an 18-year-old resident of Rockville, Maryland, born October 12, 2007. At all relevant times during her residency at Defendants' facility, from August 5, 2020 to December 16, 2021, she was a minor.

4.      Defendant ASHEVILLE ACADEMY FOR GIRLS, LLC (formerly known as Solstice East, LLC) is a North Carolina limited liability company that at all relevant times operated a residential treatment facility for adolescent girls located at 126 Camp Elliott Road, Black Mountain, North Carolina 28711.

5.      Defendant WILDERNESS TRAINING & CONSULTING, LLC (d/b/a "Family Help and Wellness") is an Oregon limited liability company with its principal place of business at 530 Center Street NE, Suite 700, Salem, Oregon 97301. Wilderness Training & Consulting, LLC owns and operates Asheville Academy for Girls and is the parent company responsible for the policies, procedures, and operations of the facility.

6.      Defendants JOHN DOE ENTITIES 1-10 are entities, including but not limited to insurance companies, management companies, and other business entities, whose identities are presently unknown to Plaintiff but who may be liable for the acts and omissions alleged herein.

## III.    JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) based on Plaintiff's claims under 42 U.S.C. § 1983, the Fair Labor Standards Act (29 U.S.C. § 201 et seq.), the Trafficking Victims Protection Act (18 U.S.C. §§ 1589, 1590), and the Thirteenth Amendment to the United States Constitution.

8. This Court has supplemental jurisdiction over Plaintiff's related state law claims pursuant to 28 U.S.C. § 1367.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the events giving rise to this action occurred in this judicial district.

10. Personal jurisdiction over Defendants exists because they conducted business, committed tortious acts, and caused injury to Plaintiff within North Carolina.

### IV. FACTUAL ALLEGATIONS

**A. Background and Admission**

11. Plaintiff was admitted to Defendants' residential treatment facility as a vulnerable minor in need of therapeutic care and support for anxiety and emotional dysregulation issues, exacerbated by the COVID-19 pandemic and difficulties with online schooling.

12. Ms. Roffman was transported to the facility on August 5, 2020, and remained there until December 16, 2021, a total of 466 days.

13. Before attending AAG, Plaintiff had been seeing Dr. Maureen Donnelly, a therapist and psychiatrist, since she was in third grade, and had consulted with school consultant Patti Murphy.

14. Defendants represented their facility as a therapeutic residential treatment center that would provide appropriate mental health treatment, educational services, and a supportive environment.

15. Plaintiff's parents paid substantial sums for this purported treatment, believing it would help their daughter address her mental health needs.

**B. Pattern of Systematic Abuse and Neglect**

**1. Punitive Isolation and Psychological Abuse**

16. Defendants employed a system of punitive isolation measures disguised as therapeutic "interventions" that served as punishment and control mechanisms.

17. Plaintiff was placed in isolation at the "pods" at the bottom of campus on multiple occasions (2-3 times), sometimes for expressing homesickness or crying, which staff characterized as "misbehaving" and requiring "intervention."

18. These isolation periods could last up to an hour, and Plaintiff witnessed other residents disappear for days at a time, with one girl reportedly being in isolation for three days before being removed from the program.

19. Plaintiff was subjected to "safety" status where she had to remain within arm's length of a staff member at all times and use the bathroom and shower with doors open.

20. Defendants implemented punitive measures that punished normal adolescent emotions rather than providing therapeutic support.

**2. Sexual Assault and Abuse**

21. Plaintiff was sexually assaulted on at least two occasions by a male staff member identified as a "mentor" whose name is unknown but who may have been a "PRN" (temporary staff member who formerly worked at the facility).

22. The first assault occurred in approximately March 2021. Plaintiff was being transported from her history class to lunch when she requested to use the bathroom. A female staff member asked the male mentor to escort Plaintiff to the bathroom while she transported other students.

23. At the bathroom facility, the male staff member diverted Plaintiff to a storage closet adjacent to the bathroom, claiming he needed to retrieve something and requiring Plaintiff to hold the heavy door open.

24. Once inside the dark, windowless storage room, the staff member turned off the light and sexually assaulted Plaintiff, including penetrative sexual assault. He threatened Plaintiff, stating "if you tell anyone, I'll kill your family and I'll make sure you never leave this place."

25. The assault left Plaintiff in severe physical pain and emotional distress. When she remained in the bathroom crying, a female staff member threatened consequences if she did not immediately return to the group.

26. A second sexual assault by the same perpetrator occurred in approximately August 2021 when he falsely claimed Plaintiff was being called for therapy, removed her from science class, and again sexually assaulted her in the same location and same manner.

27. After the second assault, the perpetrator falsely claimed he had made a mistake about which student was called for therapy.

### 3. Strip Searches and Body Searches

28. After Defendants discovered Plaintiff had begun self-harming (which began in May 2021 and had never occurred before her placement at AAG), she was subjected to strip searches twice weekly conducted by a health professional named Shae Frizsell.

29. These searches were conducted in a room by the health office, with children required to line up along the wall and wait to be called in for the degrading examinations.

30. Plaintiff was also subjected to strip searches upon admission and whenever deemed necessary by staff.

### 4. Physical Restraints and Abuse

31. Plaintiff was physically restrained on approximately five occasions by staff members.

32. On one occasion, while Plaintiff was crying in bed with her head in a pillow, a staff member (possibly named Elise) came onto her bed, pulled the pillow away, and physically held Plaintiff's head so she could not move.

33. On another occasion in a bathroom, while Plaintiff was crying and under safety supervision, a staff member with "a weird name" demanded Plaintiff speak, and when Plaintiff flinched during a search for self-harm marks, the staff member grabbed Plaintiff's hands and held them against the wall.

34. The remaining three instances of physical restraint occurred during the sexual assaults described above.

**5. Forced Labor and Economic Exploitation**

35. Defendants systematically exploited Plaintiff and other minor residents by requiring them to perform extensive unpaid labor through a formalized system of mandatory "Community Roles" and daily chores that provided direct economic benefit to the facility.

36. Plaintiff was assigned to various community roles including kitchen work, cleaning duties, and maintenance tasks that replaced paid staff positions.

37. Daily labor requirements included: room maintenance (making beds, organizing shelves, cleaning bathrooms including toilets, showers, and mirrors, vacuuming, trash removal); kitchen operations (food preparation and service, washing dishes and trays, cleaning surfaces, sweeping, mopping); and facility maintenance (cleaning common areas, general facility upkeep).

38. Residents were required to maintain facilities in "tour ready" condition at all times, suggesting the work served commercial rather than therapeutic purposes.

39. Despite performing work equivalent to paid staff positions including food service workers, custodial staff, and facility maintenance, Plaintiff and other residents received no wages, compensation, or educational credit for this labor.

40. Residents who failed to perform assigned labor tasks faced systematic punishment through Defendants' "intervention" system.

### 6. Development of Self-Harm Behaviors

41. Plaintiff had never engaged in self-harm behaviors before her placement at AAG.

42. In May 2021, while at the facility, Plaintiff began cutting herself, primarily using paper clips she could find around the facility.

43. This self-harm behavior was triggered by the initial sexual assault Plaintiff endured on or about March 2021.

### 7. Educational and Developmental Harm

44. Although Plaintiff was able to transfer credits from the facility's educational program, the traumatic environment significantly impacted her ability to learn and retain information.

45. The prolonged residential placement during critical adolescent years caused Plaintiff to miss important developmental experiences and social connections.

### 8. Unsafe and Unsanitary Conditions

46. Defendants maintained unsafe and unsanitary living conditions including overcrowded living spaces where multiple residents shared small rooms with minimal privacy.

47. Residents were forced to be outside in all weather conditions, "regardless, sunny or raining," without regard for safety or comfort.

48. The facility had maintenance issues and inadequate food service.

### C. Specific Harm to Plaintiff

49. As a direct result of Defendants' conduct, Ms. Roffman has suffered:

    a) Diagnosis of Post-Traumatic Stress Disorder (PTSD);

    b) Severe depression and anxiety;

    c) Development of ADHD symptoms;

    d) Autism spectrum diagnosis received while at AAG;

    e) Development of ARFID (Avoidant Restrictive Food Intake Disorder) in October 2023;

    f) Sexual trauma from assault by staff member;

    g) Development of self-harm behaviors that never existed prior to AAG;

    h) Educational disruption and trauma affecting learning ability;

    i) Difficulty forming healthy relationships;

    j) Loss of trust in therapeutic institutions;

    k) Loss of critical developmental experiences during adolescence;

    l) Ongoing nightmares and trauma symptoms requiring intensive therapy (including EMDR therapy three times per week);

    m) Economic exploitation through unpaid forced labor.

## V. CAUSES OF ACTION

### COUNT I

**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**

**(Against All Defendants)**

50. Plaintiff incorporates by reference all preceding allegations.

51. Defendants, acting under color of state law through their state licensure and regulation, deprived Plaintiff of rights secured by the Constitution and laws of the United States.

52. Defendants violated Plaintiff's clearly established constitutional rights, including:

   a) Fourteenth Amendment substantive due process rights to be free from abuse while in state custody;

   b) Fourteenth Amendment liberty interests in personal security and bodily integrity;

   c) Fourth Amendment rights to be free from unreasonable searches and seizures;

   d) Eighth Amendment rights to be free from cruel and unusual punishment; and

   e) Thirteenth Amendment rights to be free from involuntary servitude.

53. Defendants acted with deliberate indifference to Plaintiff's constitutional rights and safety.

54. As a proximate result of Defendants' conduct, Plaintiff suffered the damages alleged herein.

## COUNT II

**VIOLATION OF THE THIRTEENTH AMENDMENT – INVOLUNTARY SERVITUDE**

**(42 U.S.C. § 1983)**

**(Against All Defendants)**

55. Plaintiff incorporates by reference all preceding allegations.

56. The Thirteenth Amendment to the United States Constitution prohibits slavery and involuntary servitude.

57. Defendants, acting under color of state law, subjected Plaintiff to involuntary servitude by forcing her to perform unpaid labor for the economic benefit of the facility.

58. The labor performed by Plaintiff was not genuinely therapeutic or educational in nature, but rather served to reduce Defendants' operational costs and provide direct economic benefit to the facility.

59. Plaintiff was compelled to perform this labor through threats of punishment, isolation, and loss of privileges.

60. Defendants' conduct violated Plaintiff's clearly established Thirteenth Amendment rights.

## COUNT III

### VIOLATION OF THE FAIR LABOR STANDARDS ACT (29 U.S.C. § 201 et seq.)

### (Against All Defendants)

61. Plaintiff incorporates by reference all preceding allegations.

62. The Fair Labor Standards Act (FLSA) requires payment of minimum wages to employees engaged in work that benefits their employer.

63. Plaintiff performed work that provided direct economic benefit to Defendants, including facility maintenance, food service, and general upkeep.

64. Plaintiff was not paid any wages for this work, despite the work being of clear economic benefit to Defendants.

65. The work performed by Plaintiff was not genuinely educational or therapeutic, but rather constituted regular operational labor that would otherwise require paid employees.

66. Defendants violated the FLSA by failing to compensate Plaintiff for her labor.

67. Plaintiff is entitled to back wages, liquidated damages, and attorney's fees under the FLSA.

## COUNT IV

## FORCED LABOR UNDER THE TRAFFICKING VICTIMS PROTECTION ACT (18 U.S.C. § 1589)

**(Against All Defendants)**

68. Plaintiff incorporates by reference all preceding allegations.

69. The Trafficking Victims Protection Act prohibits forced labor, defined as labor obtained through force, fraud, or coercion.

70. Defendants obtained labor from Plaintiff through coercion, specifically through threats of punishment, isolation, and loss of privileges for non-compliance.

71. The labor obtained by Defendants provided them with commercial advantage and economic benefit.

72. Defendants' conduct constitutes forced labor in violation of 18 U.S.C. § 1589.

73. Plaintiff is entitled to civil remedies under 18 U.S.C. § 1595.

## COUNT V

## TRAFFICKING WITH RESPECT TO FORCED LABOR (18 U.S.C. § 1590)

**(Against All Defendants)**

74. Plaintiff incorporates by reference all preceding allegations.

75. Defendants knowingly recruited, harbored, and maintained Plaintiff for the purpose of subjecting her to forced labor.

76. Defendants benefited financially from this forced labor arrangement.

77. Defendants' conduct constitutes trafficking with respect to forced labor in violation of 18 U.S.C. § 1590.

## COUNT VI

## NEGLIGENCE

### (Against All Defendants)

78. Plaintiff incorporates by reference all preceding allegations.

79. Defendants owed Plaintiff a duty of care as a minor entrusted to their custody for therapeutic treatment.

80. This duty was heightened due to the residential nature of the program and the special vulnerability of the adolescent in Defendants' care.

81. Defendants breached their duty of care through:

 a. Failing to provide appropriate mental health treatment;

 b. Failing to maintain a safe physical environment;

 c. Failing to properly hire, train, and supervise staff;

 d. Failing to protect Plaintiff from sexual assault and abuse;

 e. Failing to report suspected abuse as required by law;

 f. Subjecting resident to punitive isolation measures;

 g. Forcing resident to perform unpaid labor for facility benefit; and

 h. Employing unqualified and dangerous staff members.

82. Defendants' breaches were the proximate cause of Plaintiff's injuries and damages.

## COUNT VII

## GROSS NEGLIGENCE

### (Against All Defendants)

83. Plaintiff incorporates by reference all preceding allegations.

84. Defendants' conduct rose to the level of gross negligence, demonstrating wanton conduct done with conscious and reckless disregard for Plaintiff's rights and safety.

85. The pattern of abuse, failure to protect from sexual assault, implementation of harmful interventions, systematic exploitation of child labor, and cover-up of abuse clearly meet the standard for gross negligence under North Carolina law.

## COUNT VIII

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Against All Defendants)

86. Plaintiff incorporates by reference all preceding allegations.

87. Defendants engaged in extreme and outrageous conduct that exceeded all bounds of decency and was utterly intolerable in a civilized community.

88. Such conduct included subjecting minor resident to sexual assault by staff, punitive isolation, forced labor, strip searches, physical restraints, and systematic psychological abuse.

89. Defendants intended to cause severe emotional distress or acted with reckless disregard of the probability of causing such distress.

90. Plaintiff suffered severe emotional distress as a direct result of Defendants' conduct.

## COUNT IX

## SEXUAL ASSAULT AND BATTERY

### (Against All Defendants)

91. Plaintiff incorporates by reference all preceding allegations.

92. Defendants, through their agent and employee, committed sexual assault and battery against Plaintiff by intentionally causing harmful and offensive sexual contact without consent.

93. Such contact included penetrative sexual assault by a male staff member on at least two occasions.

94. Plaintiff, as a minor in an institutional setting, Plaintiff could not legally consent to such contact.

95. Defendants are liable for the intentional torts committed by their employee acting within the scope of his employment or apparent authority.

## COUNT X

### NEGLIGENT HIRING, TRAINING, SUPERVISION, AND RETENTION

**(Against All Defendants)**

96. Plaintiff incorporates by reference all preceding allegations.

97. Defendants failed to properly screen, hire, train, and supervise staff members working with vulnerable minor residents.

98. Defendants knew or should have known of their employees' incompetence and unfitness for their positions, including propensity for sexual misconduct.

99. Defendants failed to remove employees that Defendants knew or should have known were unfit for their position.

100. This negligent hiring, training, supervision, and retention directly resulted in harm to Plaintiff, including sexual assault by a staff member.

## COUNT XI

### BREACH OF FIDUCIARY DUTY

**(Against All Defendants)**

101. Plaintiff incorporates by reference all preceding allegations.

102. As a residential facility for minors, Defendants stood in loco parentis to Plaintiff and owed her fiduciary duties of care, loyalty, and protection.

103. Defendants breached these fiduciary duties through their pattern of neglect, failure to protect Plaintiff from sexual assault, economic exploitation through forced labor, and prioritizing institutional interests over resident welfare.

## COUNT XII

## FALSE IMPRISONMENT

### (Against All Defendants)

104. Plaintiff incorporates by reference all preceding allegations.

105. The restrictions placed on Plaintiff, particularly the isolation interventions and safety restrictions, constitute false imprisonment under North Carolina law.

106. Plaintiff was confined against her will through physical barriers and threats of punishment.

107. Such confinement exceeded any reasonable bounds of therapeutic intervention and was without proper legal justification.

## VI.　DAMAGES

108. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer substantial damages, including but not limited to:

   A. Past and Future Medical Expenses for treatment of physical and psychological injuries;

   B. Physical Pain and Suffering from sexual assault and physical abuse;

   C. Severe Emotional Distress and Mental Anguish, as evidenced by PTSD diagnosis and ongoing psychological symptoms;

D. Lost Wages and Economic Exploitation from unpaid forced labor performed for Defendants' benefit;

E. Loss of Educational Opportunities and developmental experiences;

F. Loss of Enjoyment of Life and normal adolescent experiences;

G. Loss of Trust in therapeutic and healthcare institutions;

H. Future Therapy and Counseling Costs (currently including EMDR therapy three times weekly);

I. Lost Future Earning Capacity due to educational disruption and psychological harm;

J. Liquidated Damages under the Fair Labor Standards Act;

K. Other Economic and Non-Economic Damages to be proven at trial.

109. The egregious nature of Defendants' conduct, particularly the sexual assault of a minor by staff, systematic forced labor, and cover-up of abuse, supports an award of punitive damages under N.C.G.S. § 1D-15, as Defendants' conduct demonstrated willful and wanton disregard for Plaintiff's rights and safety.

## VII. JURY DEMAND

110. Plaintiff hereby demands a trial by jury on all issues so triable as a matter of right.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Enter judgment in favor of Plaintiff and against Defendants on all counts;

B. Award Plaintiff compensatory damages in an amount to be determined at trial;

C. Award Plaintiff punitive damages in an amount to be determined at trial;

D. Award Plaintiff back wages and liquidated damages under the Fair Labor Standards Act;

E. Award Plaintiff damages under the Trafficking Victims Protection Act;

F. Award Plaintiff reasonable attorneys' fees and costs as provided by law, including under the FLSA and TVPA;

G. Award Plaintiff pre- and post-judgment interest at the maximum rate allowed by law;

H. Grant such other and further relief as this Court deems just and proper.

Dated: October 17, 2025

**RESPECTFULLY SUBMITTED,**

By: /s/ *Ruth A. Sheehan*
RHINE LAW FIRM, P.C.
Joel R. Rhine, NCSB 16028
Email: jrr@rhinelawfirm.com
Ruth A. Sheehan, NCSB 48069
Email: ras@rhinelawfirm.com
1612 Military Cutoff Road, Suite 300
Wilmington, NC 28403
Tel: (910) 772-9960
Fax: (910) 772-9062

and

Gareth S. Purnell (*Pro Hac Vice* forthcoming)
Simon B. Purnell (*Pro Hac Vice* forthcoming)
**GRIFFIN PURNELL LLC**
2037 Airline Road, Suite 200
Corpus Christi, Texas 78412
(361) 262-1776
(361) 356-4348 Fax
gareth@griffinpurnell.com
simon@griffinpurnell.com
Service email: support@griffinpurnell.com

**ATTORNEYS FOR PLAINTIFFS**